Erik LeRoy, P.C.
500 L St., Ste 302
Anchorage, Alaska 99501
(907) 277-2006
Attorney for Debtor in Possession

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ALASKA

| In re: | : | |
|---|---|---|
| | : | Case No. A10-00824 |
| Naknek Electric Association, Inc. | : | chapter 11 |
| | : | |
| | : | |
| Debtor. | : | |
| | : | |

**DEBTOR'S EMERGENCY MOTION FOR USE OF CASH COLLATERAL**

**Introduction**

Naknek Electric Association, Inc., ("NEA") Debtor and Debtor in Possession, files this emergency motion for use of cash collateral so that it may continue to generate and distribute electricity in the Bristol Bay region and, for 30 days, continue to maintain and clean its geothermal well.

NEA operates an electric utility generation plant in Naknek, Alaska. That plant is run by diesel powered generators. It provides electricity to 591 members of the cooperative. Fish processors are NEA's largest customers consuming the vast majority of their electrical needs in June through August of each year.

NEA also is developing a geothermal well which it projects will provide more than 60% of peak summer power requirements thereby substantially reducing NEA's reliance on diesel fuel power. The geothermal well is located on property owned by NEA. Also

on that site is NEA's drill rig and accessories, known as NEA Rig #7. Before that geothermal well can produce the steam necessary for it to produce electricity, a second well must be drilled. NEA is submitting a $40 million loan application to Rural Utilities Services, an agency of U.S. Department of Agriculture, ("RUS") and the creditor whose cash collateral NEA needs to use to continue to maintain the geothermal well and run the power generation plant. Unfortunately, the recordation of a substantial writ of attachment in July forced the Debtor's chapter 11 filing.

NEA is at a junction. Either it will, within the next six months, obtain the necessary financing to finish the geothermal project, or it will sell, or assign, or plug and abandon the geothermal project. NEA does not have the necessary income to finance the continued maintenance of the geothermal well without depleting cash collateral. NEA must rely upon the significant equity in the power generation facility to protect RUS and justify NEA's use of cash collateral.

## Local Rule 4001-2 Summary

1. Identity of creditor:
    a. Rural Utilities Services, independent of the Debtor.
    b. CoBank and Baker Hughes, judgment creditors of the Debtor whose judgments Debtor seeks to avoid under 11 U.S.C. §547.
2. Nature and source of cash collateral: $323,354 of cash in Debtor's possession.
3. Estimate of cash to be used: $323,354 of cash and approximately $50,000 of receivables to be collected in the next 90 days.

4. Cash flow projection: Attached to Affidavits of Donna Vukich and Carol Fontaine.

5. Balances owed:

    a. RUS:$3,134,912

    b. CoBank:$6,960,274.03.

    c. Baker Hughes:$3,607,025.87.

6. Section 506(b) interests:

    a. RUS: $18,000 in October, $18,000 in November and $60,100 in December, plus applicable, allowable fees.

    b. CoBank and Baker Hughes: none

7. Cash collateral is not derived from rent.

8. Account receivable aging attached to Affidavits of Donna Vukich and Carol Fontaine.

9. Cash collateral is derived from inventory.

10. RUS holds a perfected first deed of trust and security interest in the Naknek power generation facility, the depreciated value of which is approximately $8,730,147.

11. RUS will be granted a security interest in post petition receivables to replace its cash collateral which the Debtor consumes.

12. The Debtor does not anticipate granting RUS any of the provisions contained in LBR 4001-2(f).

## Discussion

The Debtor's income comes from the sale of electricity from its generation plant. The geothermal well is not producing electricity at this time. Rural Utilities Services, an agency of the U.S. Department of Agriculture, holds a perfected mortgage and security agreement on the Debtor's power generation facility. It's security agreement recites that it is also secured against the Debtor's accounts. RUS' security interest was perfected in 2002 at which time a UCC-1 was recorded at Document # 514498 in the Department of Natural Resources, UCC Central docket. That UCC-1 describes the Debtor as a "transmitting utility". UCC Article 9-515(f) provides that "If a debtor is a transmitting utility and a filed financing statement so indicates, the financing statement is effective until a termination statement is filed."

RUS holds 10 outstanding notes pursuant to which NEA owed RUS $3,134,912 as of June 30, 2010. The depreciated value of the Debtor's power generation facilities is approximately $8,730,147.

On July 2, 2010, CoBank obtained from the Superior Court in Anchorage a pre-judgment writ of attachment which it recorded against NEA's power generation facilities. On August 16, 2010 Co Bank recorded in the relevant (Kvichak) recording district a Judgment in the amount of $6,960,274.03. On July 21, 2010, Baker Hughes obtained from the Superior Court in Anchorage a pre-judgment writ of attachment which it recorded against NEA's power generation facilities. On August 18, 2010, Baker Hughes recorded in the relevant recording district a judgment in the amount of $3,607,025.87. This chapter 11 was filed on September 29, 2010 to insure that both of these judgments

would be avoided as preferential transfers. An adversary action seeking to avoid these liens has or will be filed before the hearing on this Motion.

Attached to CoBank's judgment is a recitation that the judgment encumbers

> all present and hereafter existing or acquired accounts, contract rights, general intangibles, equipment, goods, inventory, instruments, documents, chattel paper, securities, deposits, credits, claims and demands belonging to Naknek Electric Association, Inc.

On the petition date, NEA had on hand cash of $323,354. On the petition date NEA had accounts receivable of $290,762. NEA has prepared a budget which separates its power generation expenses from its geothermal expenses. As the budget attached to the Declarations of Donna Vukich and Carol Fontaine in Support of NEA's Emergency Motion for Use of Cash Collateral shows, NEA 's monthly expenses associated with the power generation facility is approximately $275,000. Between now and next summer, NEA's monthly income should never drop below $275,000. In other words, the power generation facility will finance itself, with RUS' consent to NEA's use of cash in possession on the petition date and post-petition account receivables which RUS obtains a security interest in pursuant to this Motion.

Between September 29, 2010 and December 31, 2010, NEA's cash position will erode from $323,354 to $198,466. This is erosion in cash position during this season of the year is not uncommon because most of NEA's maintenance is performed in the early winter months after the summer's high electrical load demand.

NEA's problem is what to do with the cost of the geothermal site. Not included in the cash collateral budget, (it is accounted for in the separately attached geothermal budget) is the monthly cost of continuing to maintain the geothermal site. That monthly

expense is approximately $250,000. Environmental regulations require that NEA maintain the active wellbore, monitor the drilling fluid pond, the fresh water pit and the inert waste monofill. It costs NEA most of the $250,000 monthly budget to perform these tasks. (The budget is largely payroll for seven oilfield workers housed in King Salmon.) NEA's general manager, Donna Vukich, believes NEA will, in October, receive a $470,000 grant from the State of Alaska. That expectation is not documented in the budget.

NEA, its lenders and its trade creditors associated with the geothermal site need some amount of time to decide what to do with that site. NEA is proposing that it maintain the geothermal site in its present status until November 1, 2010. At that time NEA hopes to have a debtor in possession lender who will finance the continued maintenance of the geothermal facility until RUS has acted on NEA's application for loan guarantees. Alternatively, at that time, NEA may ask RUS to permit it to borrow against the power generation facility to finance a plug and abandonment of the geothermal well, at an anticipated cost of $400,000.

NEA has prepared and is submitting an application to RUS to approve a $40 million loan guaranty which would pay all of the obligations in this case. That application assumes that NEA continues to maintain the geothermal well, which costs about $250,000 a month. NEA has asked its primary lenders to finance the continued cleaning and maintenance of the geothermal well for a period of six months to allow NEA and its creditors to determine whether an RUS guaranty of loan is likely. NEA's budget assumes that it will use $250,000 of the $323,354 on hand to maintain the

geothermal well through October, 2010. If it has not found short term (6 months) debtor in possession financing before October 30, 2010, NEA may have no choice but to seek additional financing to plug and abandon the geothermal well. That decision, today, would be premature.

The Debtor needs to use all of the cash on hand and needs to use its account receivables as they are paid, to first, continue to operate its generation plant, and second, to continue maintain the geothermal well to November 1, 2010.

The Debtor is not able, within the immediate future, to obtain financing from sources other than RUS. It is unable to obtain, in the immediate future, unsecured financing under 11 U.S.C. §503(b)(1) as allowed administrative expenses of this chapter 11. The Debtor believes it is unable to obtain unsecured financing under 11 U.S.C. §364(c)(1)-(3) without granting to RUS the liens here provided. If the Debtor is not allowed to use RUS' cash collateral it will not be able to pay its post-petition obligations to its employees and post-petition obligations to other creditors and will be unable to continue to operate its power generation facility.

As adequate protection to RUS, the Debtor proposes that

1. It continue to make its normal periodic payments to RUS;
2. RUS receive, as of the petition date, a security interest in all post-petition collateral which NEA collects or otherwise receives, to the extent NEA consumes RUS' collateral.

The Debtor asked that the Court approve use of cash collateral for 90 days to allow the Debtor to continue to operate its power generation facility and for 30 days,

until November 1, 2010, to continue to maintain its geothermal well, subject to any further orders of the Court entered at any hearings within that period of time.

Dated September 29, 2010          Erik LeRoy, P.C.
                                  Attorney for Debtor in Possession

                                  */s/ Erik LeRoy*


Certificate of Service

I certify that on September 29, 2010, a copy of this pleading was served on

Asst US Trustee
S Sneed (CoBank)Sneed.Spencer@dorsey.com
D Oesting (CFC) DavidOesting@DWT.com
J Siemers (Baker Hughes) jcs@bpk.com
T Matthews (RUS) matthew.troy@usdoj.gov

by first class mail if an address in indicated above, or by electronic means through the ECF system as indicated on the Notice of Electronic Filing.


Erik LeRoy

*/s/ Erik LeRoy*