IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| In re: ) | |
| ) | Case No. A10-00824-DMD |
| NAKNEK ELECTRIC ASSOCIATION, INC., ) | Chapter 11 |
| ) | |
| Debtor. ) | **Filed On 5/2/11** |

# FOURTH STIPULATED ORDER PERMITTING INTERIM USE OF CASH COLLATERAL AND GRANTING ADEQUATE PROTECTION

Pursuant to 11 U.S.C. § 363(c)(2)(A), Naknek Electric Association, Inc., as debtor-in-possession ("Debtor"), the United States, on behalf of the United States Department of Agriculture, Rural Utilities Service ("RUS"), and National Rural Utilities Cooperative Finance Corporation ("CFC") (together, Debtor, RUS and CFC, the "Parties"), respectfully request the Court approve this Stipulated Order setting forth the terms on which Debtor may make interim use of cash collateral.

## Recitals and Certain Representations

A.  On September 29, 2010 (the "Petition Date"), Debtor filed a petition (the "Petition") for reorganization relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to 11 U.S.C. §§ 1107 and 1108, Debtor has retained possession of its assets and is authorized, as debtor-in-possession, to continue the operation and management of its business.

B.  A committee of unsecured creditors has been appointed by the United States Trustee.

C.  Prior to the Petition Date, RUS loaned money to Debtor.

D.  To secure payment of Debtor's obligations to RUS, Debtor issued a Restated Mortgage and Security Agreement dated as of March 1, 2002 (the "Mortgage"). For any property

covered by the Mortgage and governed by the Uniform Commercial Code, the Mortgage provided that it was also a "security agreement" and a "financing statement."

E.  By the Mortgage, Debtor granted RUS liens on and security interests in substantially all of Debtor's then-existing and after-acquired assets, including, but not limited to:

(1)  under Granting Clause First of the Mortgage, all Debtor's (a) fee and leasehold interests in specified real property and improvements thereon; and (b) interests in contracts for Debtor's purchase, sale or exchange of electric power or energy;

(2)  under Granting Clause Second of the Mortgage, all Debtor's interest in all other property, real, personal, or mixed, including without limitation, any and all goods, accounts, money held in trust accounts and general intangibles; and

(3)  under Granting Clause Fourth, all Debtor's interest in "all the tolls, rents, issues, profits revenues and other income, products and proceeds of the property subjected or required to be subjected to the lien of this Mortgage."

RUS's collateral, as more fully described above and in the Mortgage, is hereafter collectively referred to as the "Collateral."

F.  The Mortgage provides that all property acquired by the Debtor after the date of the Mortgage "shall, immediately upon the acquisition thereof by the Debtor, and without further mortgage, conveyance or assignment, become subject to the lien" of the Mortgage.

G.  The cash or cash equivalents among the Collateral constitutes RUS's cash collateral within the meaning of 11 U.S.C. § 363(a) (the "Cash Collateral").

H.  As of the Petition Date, RUS has a claim for an amount exceeding $3 million on obligations secured by the Mortgage.

I.    Debtor represents, to its best knowledge after a preliminary investigation, that the Cash Collateral on the Petition Date was not subject to any security interest except for the security interest of RUS.

J.    Debtor represents, to its best knowledge after a preliminary investigation, that the Collateral is not subject to any other security interests other than the security interest of RUS and the security interest of CFC granted pursuant to the Order Approving DIP Financing at DE 133. The security interests of (1) CoBank ACB and (2) Baker Hughes Oilfield Operations, Inc., d/b/a Baker Hughes, both arising from recorded judgments, were deemed void in the Stipulated Judgment entered in adversary action 10-90027 at DE 7 .

K.    Debtor represents that:

(1)    the aggregate amount of cash in Debtor's possession as of May 2, 2011, was $309,000 (Debtor's Motion for Continued Use of Cash Collateral DE 127);

(2)    Debtor continues to have an immediate need to obtain funds to continue operation of its business;

(3)    without such funds, Debtor will not be able to pay its employees' wages and salaries, related payroll taxes, essential suppliers, lessors, and other necessary operating expenses;

(4)    those limited operating expenses to which subparagraph 2 refers are only those reasonable and necessary business expenses that must be paid in order to continue Debtor's business and avoid immediate and irreparable harm to the estate pending a final hearing on a motion for use of the Cash Collateral, if any;

(5)    Debtor is and has been unable to obtain sufficient unsecured credit or unsecured debt allowable under 11 U.S.C. § 503(b)(1) as an administrative expense or unsecured

financing under 11 U.S.C. § 364(c)(1)-(3), and Debtor has no alternative source of funds to operate its business other than the Cash Collateral;

   (6) the institution in which Debtor shall deposit proceeds of Collateral pursuant to paragraphs 1 and 2 of this Stipulated Order does not have any pre-petition claim or set-off rights against Debtor.

   **It is therefore stipulated and agreed by Debtor and RUS as follows:**

   1. The Collateral as defined above is deposited in Account No. 191 556 4650 (the "Collateral Account") at Wells Fargo Bank, N.A.

   2. Within one business day after receiving any additional proceeds of the Collateral, Debtor shall deposit or transfer such proceeds into the Collateral Account.

   3. Until this Stipulated Order terminates, Debtor is hereby authorized, in accordance with the terms hereof, to use up to $300,155 of Cash Collateral (which is the replacement lien RUS received under the original Cash Collateral Order) and any other cash in its possession, solely for the purpose of paying Debtor's Chapter 11 operating expenses as set forth in the (i) NEA Cash Collateral Budget and (ii) NEA Geothermal Budget (together, the "Budget") annexed as Exhibit A to this Stipulated Order as well as any quarterly fees due to the United States Trustee;

   4. Debtor is expressly prohibited from:

   a. using any cash collateral of RUS or CFC other than the Cash Collateral authorized above;

   b. using the Cash Collateral for any purpose not set forth in the Budget, regardless of whether such purpose would be a proper purpose under applicable law;

   c. using the Cash Collateral to pay (i) any employee bonus or (ii) any fee to any

of Debtor's directors (or trustees) in excess of the directors' (or trustees') fees customarily paid per meeting by Debtor prior to the Petition Date;

        d.    using the Cash Collateral to pay the fees or expenses of any professional persons employed by Debtor pursuant 11 U.S.C. § 327 unless pursuant to an order of the Court:

        (1)    permitting not more than $5,000 in such fees to be paid subject to their potential disgorgement, or

        (2)    awarding such fees or expenses, either on an interim or final basis, pursuant to 11 U.S.C. §§ 328, 330 or 331, after notice and a hearing, at which RUS may appear and be heard.

5.    To afford RUS adequate protection of its interest in the Collateral, Debtor shall continue to make adequate protection payments of $18,000 by the last date of each month except that every third month that payment shall be $60,100 to RUS pursuant to 11 U.S.C. § 361(1).

6.    To afford CFC adequate protection of its interest in the Collateral, Debtor shall continue to make adequate protection payments under the terms of the DIP loan agreement to CFC pursuant to 11 U.S.C. § 361(1).

7.    As further adequate protection of RUS's security interest in the Cash Collateral to be used by Debtor, Debtor hereby grants to RUS and CFC replacement liens pursuant to 11 U.S.C. § 361(2) on all of the estate's property purchased or acquired with Cash Collateral, and the replacement lien granted shall relate back to the Petition Date, and the replacement lien granted shall be perfected to the same extent that the RUS's liens in Debtor's property were perfected immediately prior to the Petition Date, without any further action by any entity, except that RUS' liens shall be subordinate to the liens granted CFC pursuant to the order approving DIP Fuel Loan.

8. As further adequate protection, Debtor hereby grants RUS and CFC security interests in all cash and accounts receivable generated by Debtor after the Petition Date, and in any other of the Collateral's proceeds, product, offspring, or profits acquired by the estate after the commencement of the case, to any extent that their Mortgages and Security Interests do not already grant such security interests. RUS' security interest shall be senior to the security interest of CFC granted pursuant to the Order Approving DIP Loan but junior to the security interest of CFC granted pursuant to the Order Approving DIP Fuel Loan.

9. Debtor shall file monthly reports of Debtor's cash position, disbursements, receipts, accounts receivable and the use of the Cash Collateral.

10. During the term of this Stipulated Order, Debtor shall not lower or file any proceeding to lower its rates for electrical power and energy without RUS and CFC's written consent.

11. Debtor and its officers and agents are hereby authorized and directed to execute, file and record any security agreement, financing statements, instruments or documents when reasonably requested by RUS or CFC to evidence and perfect such security interest granted or to be granted hereunder, and such security interest shall be deemed granted and perfected without the necessity of the execution or filing of any documents otherwise required under applicable law for the granting and perfection of security interests, and such grant and perfection shall be binding on Debtor (including any subsequently appointed trustee in this case or in any superseding case under chapter 7 of the Bankruptcy Code), and creditors who have or may hereafter extend credit to Debtor or its estate.

12. If the replacement liens and other forms of protection described above are inadequate

to protect RUS or CFC's interests, RUS or CFC shall be entitled to priority under 11 U.S.C. §§ 363(c)(1) and 507(b) over all other expenses of administration of the estate.

13. All rights to use the Cash Collateral as set forth herein shall immediately terminate, without prejudice to Debtor's right to seek further Court approval to continue to use the Cash Collateral upon the provision of adequate protection of RUS and CFC's interests, upon the earlier of:

    a. entry of an order terminating this Stipulated Order;

    b. entry of a non-interim order approving the use of Cash Collateral;

    c. entry of an order under or pursuant to 11 U.S.C. § 364;

    d. the appointment of a trustee;

    e. dismissal or conversion of this case to a case under chapter 7 of the Bankruptcy Code;

    f. the end of Debtor's regular business hours on November 30, 2011.

14. Nothing in this Stipulated Order shall be construed to limit RUS or CFC's right to apply to the Court (whether on an expedited basis or otherwise) for an order vacating this Stipulated Order or the automatic stay of 11 U.S.C. § 362 or for an order authorizing other appropriate relief (including the appointment of a trustee or conversion or dismissal of this case) at any time after any breach of this Stipulated Order by Debtor.

15. Nothing in this Stipulated Order shall be construed as:

    a an admission by RUS, CFC, or any other creditor, of any fact or law regarding Debtor's operations, including, but not limited to, whether Debtor should continue its operations or whether it has a reasonable likelihood of successfully reorganizing.

  b. a waiver by RUS or CFC of its right (1) to challenge any application to the Court for payment, or seek a refund, of any fee or expense of any professional person, (2) to challenge the continuation in office of, to oppose the payment of any fee to, or to request a refund of any fee to, any of Debtor's officers or directors (or trustees).

 16. This Stipulated Order is entered without prejudice to any creditor's claim or security. Nothing in this Stipulated Order is intended to establish, deny or subordinate the priority or perfection of any lien or security interest in the Geothermal Assets. All parties reserve all rights, claims and defenses.

 17. This Stipulated Order, and each and every one of its terms, conditions, and other provisions, shall be effective as if it were agreed upon on the Petition Date.

SO ORDERED this 2nd day of May, 2011.

      /s/ Donald MacDonald IV
      DONALD MacDONALD IV
      United States Bankruptcy Judge

[Consents contained on additional pages]

      */s/ Erik LeRoy*
ERIK LeROY
Erik LeRoy, P.C.
500 L Street, Suite 302
Anchorage, AK 99501
(907) 277-2006
Attorney for Debtor-in-Possession

TONY WEST
Assistant Attorney General

KAREN L. LOEFFLER
United States Attorney

RICHARD L. POMEROY
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, #9, Rm. 253
Anchorage, AK 99513-7567
(907) 271-5071
(907) 271-2344 (f)


/s/ Richard L. Pomeroy
CHRISTOPHER KOHN
TRACY J. WHITAKER
MATTHEW J. TROY
Attorneys, Civil Division
U.S. Department of Justice
P.O. Box 875
Ben Franklin Station
Washington, D.C. 20044
(202) 514-9038
(202) 307-0494 (f)

Attorneys for the United States of America

        /s/ David Oesting
David Oesting
Davis Wright Tremaine
701 West 8th Ave., Ste 800
Anchorage, Alaska 99501

Attorneys for CFC

Serve:
E. LeRoy, Esq.
ECF Participants per NEF

   5/2/2011